**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TIMOTHY A. BARON,

                    Plaintiff,

          -v-                                    3:25-CV-166 (AJB/DJS)

JOHN LAMBERT *et al.*,

                    Defendants.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

<u>**DECISION and ORDER**</u>

## I.     INTRODUCTION

On February 6, 2025, *pro se* plaintiff Timothy A. Baron ("plaintiff") filed this civil action "in his sovereign and private capacity" alleging that defendants Otsego County Court Judge John F. Lambert ("Judge Lambert"), Otsego County District Attorney John M. Muehl ("DA Muehl"), and two attorneys from the Cooperstown area named James P. Ferrari ("Attorney Ferrari"), and Joseph Simons ("Attorney Simons") may have violated a whole host of federal laws, treaties, and constitutional provisions.  Dkt. No. 1.

The case was initially administratively closed because plaintiff had failed to pay the filing fee or submit an application to proceed *in forma pauperis*, Dkt. No. 2, but it was reopened when plaintiff paid the fee, Dkt. No. 4, and submitted an amended complaint, Dkt. No. 3.  Thereafter, DA Muehl answered.  Dkt. No. 14.  The remaining defendants have yet to appear, *see generally* Docket, and it is unclear from the existing record whether they have been served with process.

On April 30, 2025, DA Muehl moved under Rule 12(c) of the Federal Rules of Civil Procedure for a judgment on the pleadings.  Dkt. No. 16.  According to DA Muehl, plaintiff's

operative complaint is incoherent and cannot be deciphered. *See id*. Plaintiff, for his part, has

opposed DA Muehl's motion. Dkt. No. 21. Plaintiff has also filed a panoply of motions and

other documents using the Court's electronic filing system.

Plaintiff's filings include, but are not limited to, an "emergency motion for mandatory

judicial notice," Dkt. No. 19, a "motion for final judgment or dismissal with prejudice," Dkt. No.

22, a series of sealed filings, Dkt. Nos. 24, 26, 28, 34, an "*ex parte* notice of enforced exit from

commercial control and demand for final restitution and release," Dkt. No. 23, a "statement of

principle," Dkt. No. 36, copies of a "final criminal referral notice, order of dismissal, demand for

restitution, motion to waive fees, venue objection, and claim for property forfeiture," Dkt. Nos.

35, 39, 40, and copies of a "final order and judgment," Dkt. Nos. 41, 42, 43, 44.

For the reasons explained below, plaintiff's operative complaint is *sua sponte* dismissed

because it lacks an arguable basis in law or fact. *See Neitzke v. Williams*, 490 U.S. 319 (1989).

## II.    DISCUSSION

As an initial matter, plaintiff is entitled to some special consideration because he is *pro*

*se*. Broadly speaking, this means that his pleadings, motions, and other filings must be held to

less stringent standards than those drafted by an attorney. *See, e.g.*, *Ahlers v. Rabinowitz*, 684

F.3d 53, 60 (2d Cir. 2012). The Second Circuit has repeatedly held that *pro se* filings should be

construed liberally, given "special solicitude," and interpreted to raise the strongest claims they

suggest. *See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

However, even accounting for his *pro se* status, plaintiff's operative complaint—whether

construed as his initial forty-eight-page pleading or the shorter, twelve-page amended pleading

that plaintiff submitted after he paid the filing fee—must be *sua sponte* dismissed because it is

"frivolous." *See, e.g.*, *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363–64

(2d Cir. 2000) (per curiam) (holding that "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee"); *Bayne v. Health Ins. Portability & Accountability Act*, 2012 WL 119617, at *4 (E.D.N.Y. Jan. 17, 2012) (collecting cases).

To be clear, the Court's use of the word "frivolous" is not intended to demean or belittle plaintiff or his beliefs about the alleged harms he seeks to remedy in this action. Instead, it is a legal term of art used in federal court when a civil action lacks "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

First, a review of plaintiff's pleadings, documents, and other filings demonstrate that this action is "factually frivolous." A civil action is factually frivolous if "the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Plaintiff's complaint fits this definition. His initial pleading begins with a pages-long, *seriatim* list of federal civil and criminal statutes, treaties, and constitutional provisions that run the gamut from comfortably familiar territory, such as the Fourteenth Amendment or 42 U.S.C. §§ 1981 and 1983, to areas of federal law that are downright arcane, such as the "Convention on International Road Traffic of the 19th Day of September 1949." *See* Dkt. No. 1 at 1–3.[1]

On the other side of this laundry list of statutes and constitutional provisions, plaintiff's initial pleading sets forth an introductory statement where he alleges that:

> I, Timothy Baron, am here to establish and lay on the table, for the record, that I am a living being my blood flows and my flesh lives. I, Timothy Baron, am Sovereign, and nothing stands between me and the Divine. I humbly ask for remedy, cure, and maintenance. I, Timothy Baron, did not consent to anything the defendants did or wrote about my person.

---

[1] Pagination corresponds to CM/ECF headers.

With all due care, Plaintiff has continuously been a victim of discrimination, racial profiling, torture, and abuse by people who pretend to be officials and officers who took an oath to uphold the Constitution of the United States in the State of New York . . . . The defendants have also neglected the Plaintiff from exercising his religious liberty and equal, inalienable rights with their tricks and schemes.  They prohibited the Plaintiff from participating in interstate commerce through unfair practices and malicious prosecution . . . . The Plaintiff did not consent and refused to be treated in the same manner as the late Martin Luther King Jr., when "United States" local, state, and federal government agencies were found guilty of conspiring to assassinate Dr. King by a Memphis jury, far too late, in 1999 . . . . The officials and officers have deliberately inflicted severe physical and emotional pain on the Plaintiff.  They have retaliated against the Plaintiff for standing firm against their bullying practices . . . .

. . . .

As we turn the table around, it has come to light that the mentally ill D.A. John Muehl was involved in a range of tricks orchestrated, staged, plotted criminal activities, malicious prosecution misconduct such as money laundering, scheme or artifice, staging, extortion, taxing, self-dealing, arson, trapping, blackmailing, framing, bribing, collaborating, fixing, kidnapping, trafficking, monopolizing, exploiting, and organizing crimes with the aid and accessory of his fraternity, Judge John Lambert, Judge Lucy P. Bernier, James Ferrari, Joseph Simons (White Supremacy and KKK members in mock trials, conflict of interest) and others who failed to intervene.  This discovery highlights the importance of reviewing all previous cases involving these individuals to ensure they were handled fairly without bias and prejudice on grounds of race, color, national origin, sex, religion, age, marital status, sexual orientation, gender identity, military status, disability ethnicity or nuisance.

It's time to hold government workers accountable when they violate and deprive universal rights and civil liberty, Americans Against Qualified Immunity.  Let's continue to commit ourselves to righting the wrongs of the past and enforcing existing civil rights.

Dkt. No. 1 at 3, 40 (so in original).

Respectfully, the Court cannot make heads or tails out of this introductory statement.  It

does not describe or explain what did or did not happen to plaintiff, let alone what any named

defendant might have done or failed to do.  And rather than expounding in any level of factual detail, the remainder of plaintiff's complaint goes on to quote a further series of legal standards and other principles that might or might not be related to the generalized accusations levied in his introductory statement.  *See id*.  In sum, plaintiff's initial, forty-eight-page complaint does not set forth any meaningfully descriptive and/or non-conclusory factual allegations tending to establish what might have occurred, or when, or how, or to whom.  *See id*.

Plaintiff's amended complaint provides even less factual detail, in conclusory fashion or otherwise.  Dkt. No. 3.  Instead, this pleading recites a similarly broad-ranging series of federal- and state-court cases and statutory provisions, including but not limited to the "former presidents act," the "hate crimes prevention act," language suggesting that plaintiff thinks the United States has filed an unopposed motion to intervene in this action, and a citation to at least one case that discusses the "legality of Alternative Organ Donation Practices."  *See id*.  Again, just as with his initial pleading, nowhere does plaintiff identify any non-conclusory factual allegations tending to establish what might have occurred, or when, or how, or to whom, let alone how one or more of the named defendants might be responsible for it.  *See id*.

Plaintiff's other submissions are of a similar thematic nature.  For instance:

> Plaintiff's "Emergency Motion for Mandatory Judicial Notice" cites a similar series of federal legal provisions, cautions that "time is of the essence," and seeks a judicial order finding that "Plaintiff's rights to privacy, secrecy, and immediate compensation are preserved."

Dkt. No. 19.

> Plaintiff's "Amended Ex Parte Notice of Enforced Exit from Commercial Control and Demand for Final Restitution and Release" notifies the "Court and all parties of an immediate and irrevocable exit from all unlawful commercial presumptions and declares that "[a]ny unauthorized bonding, securitization, or commercial use of Plaintiff's identity, estate, or account shall be deemed constructive

fraud and a breach of fiduciary duty, triggering immediate redress under equity, statute, and public trust doctrine." This filing also "formally charges all named defendants" with violations of several federal criminal laws.

Dkt. No. 24.[2]

Plaintiff's "Statement of Principle" explains that he "bow[s] not to men, titles, or artificial authority, but to the eternal principles enshrined in the Constitution," cautions that "[t]his bow is not of submission, but of sovereign acknowledgement," gives notice of a "criminal referral," and proposes that the Court find that plaintiff has, *inter alia*, "lawfully exited commercial jurisdiction."

Dkt. No. 36.

In short, it is abundantly clear from plaintiff's pleading, documents, and other filings that he believes that one or more actors or entities—perhaps even the named defendants—have done or tried to do something inappropriate to him, possibly in connection with their official duties (as a state-court judge, a county district attorney, and/or private members of the practicing bar).

However, it is impossible to decipher from any of these filings what those improprieties might be or have been. Aside from repeated references to a strongly held but seemingly entirely subjective belief that wrongdoing occurred, the primary unifying theme of plaintiff's filings is that they lack any of the basic factual information that might permit a reader to plausibly infer that any actionable misconduct is attributable to any particular party, named or otherwise.

Plaintiff's subjective beliefs about the misconduct of others—however strongly held those beliefs may be—are not a substitute for plausible factual allegations. Where, as here, a plaintiff has alleged only his subjective beliefs and/or conclusory suspicions in the absence of any supporting non-conclusory factual predicate, the pleading is subject to dismissal because it is

---

[2] Plaintiff has filed certain documents *ex parte*. Those documents were placed under seal by the Clerk of the Court as a cautionary measure. The Court has reviewed these filings and determined that they should be unsealed in light of the strong presumption in favor of access to court records. *See Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019).

"factually frivolous." *See, e.g.*, *Nobile v. Queen Laticia of Spain*, 2023 WL 8258336, at *2 (S.D.N.Y. Nov. 27, 2023) (collecting cases); *Liu v. QBE-Commercial Check #00361360*, 2021 WL 4819997, at *3 (N.D.N.Y. Oct. 15, 2021) (same).

Second, a review of plaintiff's pleadings and other filings demonstrate that this action is "legally frivolous." An action is legally frivolous when it is based on "an indisputably meritless legal theory" or "a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (cleaned up).

Plaintiff's pleadings meet this definition. Broadly construed, plaintiff and defendants are alleged to live and/or work in the New York State. This means the Court would probably lack the subject-matter jurisdiction needed to hear this dispute unless it raised one or more colorable "federal questions," or actionable federal-law claims. *See Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53–54 (2d Cir. 2019) (explaining "citizenship" limitation on the exercise of federal diversity jurisdiction). As noted *supra*, plaintiff's initial and amended pleadings both reference a pages-long list of laws, treaties, and constitutional provisions. However, because it appears that plaintiff is complaining about official misconduct that might have affected his civil rights, the most likely applicable law is 42 U.S.C. § 1983.

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff's claims—whatever their precise contours—would be subject to dismissal under this general body of law.  First, Judge Lambert is entitled to judicial immunity for his conduct in a state-court proceeding.  *See Mireles v. Waco*, 502 U.S. 9, 11 (1991).  Courts routinely dismiss as legally frivolous a *pro se* litigant's § 1983 claims when they are asserted against a defendant who is allegedly acting in his judicial capacity.  *See, e.g.*, *Maltese v. Delta Airlines Corp.*, 2024 WL 4581712, at *2 (E.D.N.Y. Oct. 25, 2024) (collecting cases).

Second, DA Muehl enjoys broad prosecutorial immunity for virtually any constitutional claims based on his conduct in a state-court prosecution.  *See, e.g.*, *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).  Courts have repeatedly dismissed as legally frivolous a *pro se* litigant's § 1983 claims when they are asserted against the district attorney or another defendant who is allegedly acting as a prosecutor.  *See, e.g.*, *Faltine v. Murphy*, 2016 WL 3162058, at *3 (E.D.N.Y. June 3, 2016); *Gssime v. Kawanta*, 2012 WL 3241431, at *3 (E.D.N.Y. Aug. 2, 2012).

Third, a 42 U.S.C. § 1983 plaintiff must plausibly allege that the challenged misconduct constitutes "state action."  *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012).  "[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  But Attorney Ferrari and Attorney Simons appear to be private actors who, absent some exceptional circumstances not intelligibly presented here, cannot be sued under 42 U.S.C. § 1983.  *See, e.g.*, *Harrison v. New York*, 95 F. Supp. 3d 293, 329 (E.D.N.Y. 2015) (collecting cases).

Aside from 42 U.S.C. § 1983, plaintiff's initial and amended pleadings go on to identify a host of other federal statutes and provisions.  To the extent that plaintiff has attempted to assert one or more *civil* claims based on any *criminal* statute that he has identified, those claims would be subject to dismissal because a private plaintiff cannot assert them.  *See, e.g.*, *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (collecting cases for principle that federal criminal statutes do not provide private rights of action).  Alternatively, to the extent that one or more of the remaining statutes plaintiff has identified *might* provide a private cause of action, neither plaintiff's initial or amended pleadings nor any of his other filings give fair notice of what his actionable claim or claims might be.

In sum, then, plaintiff's action is subject to dismissal because it is factually and legally frivolous.  *See, e.g.*, *Neitzke*, 490 U.S. 319 at 325.  The next question is whether plaintiff should be given leave to try to further amend.  *See, e.g.*, *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 303 (N.D.N.Y. 2019) (cleaned up) ("[A]lthough district courts in this Circuit are generally reluctant to dismiss a *pro se* plaintiff's action without permitting leave to replead, the Second Circuit has explained that it is nevertheless appropriate to do so in cases where it appears that granted leave to amend is unlikely to be productive.").

The answer is no.  Plaintiff has filed two pleadings and well over a dozen documents that purport to support his claims for relief.  As discussed *supra*, the Court has reviewed each of these filings carefully.  None of these filings provide any indication of a non-frivolous, non-conclusory legal claim that might be actionable in this forum.  Instead, a review of these filings permits only a single conclusion: plaintiff's assertions of misconduct—whatever their precise nature and to whomever they might be directed—are rooted in subjective beliefs and conclusory suspicions.

Because plaintiff's complaint, his amended complaint, and his supporting submissions are devoid of any arguable basis in law or in fact, permitting him to engage in another attempt at re-pleading is unlikely to be productive. Accordingly, leave to amend must be denied. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (permitting denial of leave to amend where, as her, there is no indication plaintiff "has a claim that [he] has inadequately or inartfully pleaded and that [he] should therefore be given a chance to reframe").

Finally, in reaching the conclusion that this action should come to an end without giving plaintiff an opportunity to try to further amend (or any advance warning that this matter appears to be frivolous and an opportunity to try to explain why it might not be), the Court is mindful of the Second Circuit's admonition that "*[s]ua sponte* dismissals without notice and an opportunity to be heard deviate from the adversarial system and tend to produce the very effect they seek to avoid—a waste of judicial resources—by leading to appeals and remands." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82 (2d Cir. 2018) (cleaned up).

Even so, the Court concludes that this case falls within one of the narrow-but-important exceptions that the Second Circuit has repeatedly recognized: a "dismissal without notice is permissible when it is 'unmistakably clear' that the underlying case is frivolous or the court lacks jurisdiction." *Tewari v. Sattler*, 2024 WL 177445, at *1 (2d Cir. Jan. 17, 2024) (summary order) (quoting *Catzin*, 899 F.3d at 82). Indeed, courts in this circuit have almost uniformly recognized that lawsuits framed in the distinctive language presented by plaintiff in his pleadings and other filings warrant summary dismissal. *See, e.g.*, *Miller v. Onondaga County*, 2024 WL 2835041, at *3 (N.D.N.Y. June 4, 2024) (collecting cases refusing to credit "sovereign citizen" or adjacent legal theories and dismissing those claims as frivolous); *Tyson v. Clifford*, 2018 WL 6727538, at *3 (D. Conn. Dec. 21, 2018) (same).

III.    **CONCLUSION**

This case must be dismissed because it lacks an arguable basis in law or fact.  Plaintiff is cautioned that civil actions filed in federal court must conform with the Federal Rules of Civil Procedure, including Rules 8 and 10, and with the Local Rules of practice promulgated by each judicial district.  Further lawsuits filed in this federal judicial district that are deemed factually or legally frivolous will be dismissed and may be referred to the Chief Judge for additional action.

Therefore, it is

ORDERED that

1.  Plaintiff's complaint is DISMISSED as frivolous;

2.  The remaining motions are DENIED as moot; and

3.  The Court CERTIFIES pursuant to 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith and therefore *in forma pauperis* status is DENIED for purpose of an appeal.[3]

The Clerk of the Court is directed to terminate the pending motions, unseal the *ex parte* filings, enter a judgment accordingly, and close the file.

**IT IS SO ORDERED.**

Dated:  June 23, 2025
         Utica, New York.

Anthony J. Brindisi
U.S. District Judge

---

[3] An appellant demonstrates "good faith" for purposes of the *in forma pauperis* statute when he seeks appellate review of an objectively non-frivolous issue.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  Although *Coppedge* was a direct criminal appeal, courts in this circuit apply this "objective good faith" standard to good-faith questions in civil matters.  *See, e.g.*, *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 323 (S.D.N.Y. 2010).